THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LYSIRICK WILSON, Defendant-Appellant.

First District (1st Division)   No. 1—87—1070

Opinion filed June 4, 1990.

Randolph N. Stone, Public Defender, of Chicago (Thomas J. Brosnan, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Gael O'Brien, and Patrick J. Finley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Lysirick Wilson was convicted, after a jury trial, of unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3(a)), and attempted criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)) and sentenced to seven years' imprisonment. Wilson appeals, arguing that the prosecution improperly attempted to impeach a witness and made improper remarks during closing argument. For the reasons below, we reverse and remand for a new trial.

At trial, the victim testified that on October 24, 1986, Lysirick Wilson had come to her apartment for the ostensible purpose of discussing a Halloween party she was planning. Wilson's fiancee, Tina Houston, and the victim's boyfriend were brother and sister. The victim knew Wilson only as "Rick."

The victim testified that she let Wilson into her apartment, where they talked briefly, and as she was letting Wilson out, he turned on her, threw her to the floor, unzipped her pants, and tried to force her legs apart. As the two struggled, the victim suggested they go to her bedroom. The ruse worked, and Wilson let her up. The victim pushed Wilson as hard as she could, ran to the kitchen, and grabbed a knife, severely cutting a finger in her haste to arm herself. She threatened Wilson with the knife, and he fled. The victim then sought help from a neighbor, who tended to the finger and called the police, who took the victim to the hospital. The hospital records indicated that the victim received stitches in her finger, complained of no other injuries, and that there were no bruises or other marks of a struggle.

On cross-examination, the victim admitted that Wilson had not threatened, slapped or punched her, and never exposed his penis to her

or uncovered her genitalia. She also acknowledged making a phone call to Tina Houston on October 26, 1986.

Tina Houston testified that on October 26, 1986, she received a call from the victim, who said that Wilson had attacked her. Houston said the victim also told her that Wilson had threatened to tell her boyfriend that he had seen another man in the apartment. (The victim had previously filed a complaint against her boyfriend for beating her after he had caught her with another man.)

On cross-examination, the prosecution asked Ms. Houston whether she had been convicted for forgery. Ms. Houston said no. Defense counsel objected, and during a sidebar conference, the prosecution was unable to provide proof of the conviction. The trial court sustained the objection and instructed the jury to disregard the question and answer.

The prosecution also asked Ms. Houston about a meeting before the trial with the assistant State's Attorney, where he had asked her whether she knew of any reason why the victim would lie. Ms. Houston acknowledged the meeting, but stated that the assistant State's Attorney had not identified himself, and that in response to his question, she had told him "no" and that she didn't want to talk to him. The discussion was corroborated, however, by Mr. Larry Applebaum, a law clerk in the State's Attorney's office who had been present during the conversation. Mr. Applebaum testified that the assistant State's Attorney had clearly identified himself before asking Ms. Houston any questions.

During closing arguments, the prosecution made several statements to which objections were sustained. The prosecutor also made two statements, quoted below, to which defense counsel did not object.

The jury found Wilson guilty, and he was convicted of unlawful restraint and attempted criminal sexual assault. Wilson appeals.

■ Wilson first challenges the attempt to impeach Tina Houston with an unsubstantiated prior conviction. The trial court sustained defense counsel's immediate objection, however, instructed the jury to disregard both question and answer, ordered Ms. Houston's answer stricken, and the alleged prior conviction was not mentioned again. The trial court's actions were sufficient to avoid prejudice to Wilson. But the prosecution's use of an unsubstantiated conviction, though not substantially prejudicial, was nevertheless improper.

Wilson also challenges several improper remarks by the prosecution during closing arguments. We find no prejudice where prompt objections were sustained and, where appropriate, the jury instructed. But two statements, to which defense counsel did not object, denied Wilson a fair trial, and although failure to object ordinarily waives re-

view, we accept Wilson's arguments because the evidence here was closely balanced and the errors substantial. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

The evidence, while sufficient to prove guilt, was not overwhelming. There were no eyewitnesses to the assault besides the victim; thus, the principal evidence against Wilson was the testimony of the victim. Tina Houston, however, testified that the victim had a motive to lie about the assault.

The verdict, therefore, rested on the jury's determination of the relative credibility of the victim and Ms. Houston and the weight accorded their respective testimony. That determination, however, was directly addressed in the prosecutor's statements, and we cannot determine whether the jury's decision was based on the proper standards of review, or influenced by the prosecutor's improper statements.

During closing arguments, the prosecution addressed the credibility of Tina Houston, stating:

> "Counsel would have you believe my job as Assistant State's Attorney as a representative of the People of the State of Illinois is to convict innocent people. It's not my job. I represent all of the People of the State of Illinois, including the Defendant. It is my duty and obligation if I become aware that someone's not guilty, to dismiss that case. That's my obligation as a sworn officer of the Court. And we've got two hundred sixty or two hundred seventy other felony cases on this call that all need to be fully and properly prosecuted and investigated. I submit to you Ladies and Gentlemen that the defense case rises or falls on their evidence, on Tina Houston. Either she told you the truth or she lied. And she lied to you in this very courtroom."

The State contends that it was making invited comments on Ms. Houston's credibility.

█ The State may attack the credibility of a defense witness, but that attack must be based on the evidence. The tactic of expressing personal beliefs, or invoking the integrity of the State's Attorney's office, to attack the credibility of a witness has been condemned:

> "It is fair to say that the average jury, in a greater or less degree, has confidence that [the obligations to produce proper convictions and prevent wrongful ones], which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."

*(Berger v. United States* (1935), 295 U.S. 78, 88, 79 L. Ed. 1314,

1321, 55 S. Ct. 629, 633.)

"The State's Attorney represents the People of the State of Illinois in the courtroom. The words he speaks carry the authority of the People and of the State. Thus, the State's Attorney must choose his words carefully so that he does not use that authority to persuade a jury that there is a greater authenticity in what he says than in what the defense says." (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 378, 381 N.E.2d 1217.)

The reason for condemnation is self-evident: the fear that the jurors, relying on the integrity of the prosecutor, will defer to his or her judgment concerning the guilt of the accused or the credibility of a witness. However, "[i]t is the duty solely of the jury to determine the credibility of the witnesses and guilt or innocence of the accused; it is not the privilege of the prosecutor." *Valdery*, 65 Ill. App. 3d at 378.

■ Here, the prosecutor did not refer to the evidence impeaching Ms. Houston. Rather, the prosecutor reminded the jury of his duties and obligations as a representative of the State and officer of the court, and his personal knowledge of the court call, then flatly declared that Tina Houston had lied. The statement clearly implied that the jury could believe Wilson was guilty because prosecution was tantamount to guilt, and that any doubts concerning Tina Houston could be resolved in favor of the State because the prosecutor's declaration that she had lied was consistent with his obligation to reveal exculpatory evidence, if any. Because it is impossible to determine whether the jury exercised its independent judgment to assess Ms. Houston's credibility, or was swayed towards its natural inclination to accept the word of the prosecution, we conclude that the prosecutor's statement was substantially prejudicial.

Wilson also argues that the prosecutor improperly misstated the law. Addressing the defense theory of the case, the prosecutor stated:

"Is it curious to anyone the defense would have you believe everybody in this case is guilty except the Defendant? [State's witness] Kondal committed perjury. The State's Attorney is guilty of trying to frame someone. [The victim] is guilty."

Wilson contends that the statement suggested an improper standard for review of the evidence. The State counters that it was making an invited comment on the defense theory.

■ To inform a jury that to believe the defense witnesses the jury must find that each of the State's witnesses was lying is a misstatement of law that denies a defendant a fair trial. In *People v. Ferguson* (1988), 172 Ill. App. 3d 1, 526 N.E.2d 525, for example, the prosecution stated: "[T]o find the Defendant not guilty of the charges, he has

before him, you have to believe he told you the truth. You have to feel [other defense witnesses] told you the truth. And that all of [the State's witnesses] are liars and fools." (*Ferguson*, 172 Ill. App. 3d at 13.) In *People v. Cole* (1980), 80 Ill. App. 3d 1105, 400 N.E.2d 931, the prosecution stated: "[Y]ou got [*sic*] to ask yourselves if you are going to believe *** the alibi witnesses. Is there one iota of truth in the testimony of the witnesses for the State. You have got to find that [witnesses for the State] are lying." *Cole*, 80 Ill. App. 3d at 1107. See also *United States v. Vargas* (7th Cir. 1978), 583 F.2d 380; *United States v. Phillips* (7th Cir. 1975), 527 F.2d 1021.

■■ The proscription against misstatements of law includes statements that in effect distort the burden of proof by suggesting incorrectly what the jury must find to reach a certain verdict. The correct standard for consideration of the evidence in a criminal trial is not whether one side is more believable, but whether, taking all of the evidence into consideration, guilt as to every essential element of the charge has been proven beyond a reasonable doubt. *People v. Crossno* (1981), 93 Ill. App. 3d 808, 821-22, 417 N.E.2d 827.

■■ Here, unlike *Ferguson* or *Cole*, the prosecutor's statement was not an instruction to the jury concerning how it must consider the evidence. Despite the semantic distinction, the statement conveyed the same substantive message: Wilson carried a burden of proof to establish his innocence, and to meet his burden of proof, Wilson was required to show that the State's witnesses had lied. Clearly, Wilson was not required to present any such proof, and the jury was not required to make any such finding. The prosecutor's statement created doubt as to whether the jury applied the proper standard of proof in considering the evidence. It was, therefore, substantially prejudicial.

We note that the statements here were not as egregious as those that have previously justified reversal, but the issue is not one of degree. To invoke the integrity or authority of the State to endorse or discredit a witness, or misstate the burden of proof or standard of review, to any extent, compromises the fairness of the judicial process and shall not be tolerated. Accordingly, we reverse and remand for a new trial.

Reversed and remanded for a new trial.

CAMPBELL and MANNING, JJ., concur.