THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL LEE, Defendant-Appellant.

First District (3rd Division)   No. 1—89—0759

Opinion filed May 6, 1992.

Rita A. Fry, Public Defender, of Chicago (Karen A. Popek, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Joseph P. Roddy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, Michael Lee, was convicted of burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—1) and sentenced to five years' imprisonment. On appeal, defendant asserts that (1) he was not found guilty of burglary beyond a reasonable doubt because the evidence was insufficient to establish that he possessed the intent to commit a theft at the time he entered the tavern; (2) he was denied a fair trial due to the prosecutor's misstatement of law regarding the voluntary intoxication defense and improper comments vouching for the credibility of a State witness; (3) he was denied the effective assistance of counsel because his attorney failed to tender jury instructions on the affirmative defense of voluntary intoxication; (4) he was denied a fair trial because the instruction limiting the jury's consideration of prior inconsistent statements as substantive evidence confused and misled the jury; (5) he is entitled to a new sentencing hearing because the trial court erroneously believed that he was not statutorily eligible for probation due to a prior conviction; and (6) his sentence was excessive. We reverse.

The effect of the defendant's intoxication during the commission of a burglary is the main issue in this case.

Defendant was arrested on April 30, 1988, for the burglary of the Lucky Lounge at 1951 South Kedzie Avenue, Chicago, Illinois. His first jury trial ended in a mistrial because the jury was unable to reach a unanimous verdict. After a second jury trial, defendant was convicted of burglary and sentenced to five years' imprisonment.

Allen Evans, who operated the tavern at the time of the burglary, testified that he left the tavern between 2:30 and 3 a.m. on April 30, 1988, after locking the doors and windows. At 8 a.m., Evans received a phone call from the police informing him of a burglary. When Evans arrived at the tavern, the left front window had been taken out and the bars kicked in. The window, which was about five feet by five feet, was four to five feet from the ground. Inside, the tavern was a mess, the cash register was broken, liquor was thrown on the floor, and money was missing.

Later, at the police station, police showed Evans items he identified as being from the tavern: two remote controls, a calculator, and a half-pint of Black Velvet whiskey. Evans stated that he did not give defendant permission to enter the tavern or to take anything from the premises.

On cross-examination, Evans discussed problems he had had with the building's owner, James Lewis. On a previous occasion, police found Lewis in the tavern when it was closed. Evans, who had not given Lewis permission to be in the tavern, told the police to arrest him. After that incident, Evans put a security gate between the tavern and Lewis' residence, which was in the rear of the building. The gate was later broken, and Evans replaced it with a double gate. Although Lewis agreed to pay the building's electric bill in exchange for living in the building, Evans explained, Lewis did not pay the bill, and Evans locked him out of the tavern.

Evans testified that one of the two security gates between the tavern and Lewis' apartment was broken after the burglary. Evans, however, admitted that he testified at the first trial that both gates had been broken. He also testified that a 24-inch Sears television set, $2,000 worth of liquor, and $4,500 in cash were missing after the burglary. None of that property was ever recovered.

Evans further stated that he saw defendant intoxicated at the police station after the burglary. Although Evans testified that he did not see the police try to fingerprint defendant, he admitted that, at the first trial, he stated that the police could not fingerprint defendant because he was so drunk he did not know whether it was day or night.

Police officer Edward Shenberger testified that he received a burglary call at 7:50 a.m. on April 30, 1988. When he arrived at the tavern, he noticed that the front window had been removed from its frame and placed on the sidewalk. He did not see anyone in or around the tavern. As he was getting out of his car, however, he saw a man climbing out of the open tavern window. He arrested the man and

searched him, finding two remote control devices, a calculator, and a half-pint whiskey bottle, but no weapons. In court, Shenberger was unable to identify defendant as the man he saw climbing out of the tavern window. He stated, however, that the man he arrested was the same man he later saw in the police station interrogation room.

On cross-examination, Shenberger stated that Evans did not tell him that a large quantity of liquor, a 24-inch television set, or money was missing. When he searched defendant at the scene, Shenberger did not find any burglary tools or large sums of money, nor did he remember any tools being found around the building.

Shenberger's report indicated that defendant, who had been drinking, entered and exited the tavern through the front door. On redirect examination, Shenberger stated that he was mistaken because the front door was not open while he was there. Although the report stated that defendant was highly intoxicated and unable to print, Shenberger testified, one of the lockup keepers probably wrote that part of the report because he did not.

In court, Chicago police detective Carmel Abbate identified defendant as the arrestee he attempted to interview at the police station after the burglary. Abbate testified that he could not interview defendant because he was so intoxicated that he could not respond. Abbate also stated that Evans told him that he lost $4,503 in consumer goods, including a television set and assorted liquors. Evans, however, did not report that he lost $4,500 in cash or any money from the cash register.

After deliberations, during which the jury asked the trial court for additional information about Shenberger's testimony, the jury found defendant guilty of burglary. At the sentencing hearing, the prosecutor presented previous convictions for two thefts, attempted armed robbery, armed robbery, and burglary, although none of the convictions occurred in the previous 10 years. After mitigation and a statement by defendant, the trial court sentenced defendant to five years' imprisonment, based on his criminal background.

Defendant asserts that he was denied effective assistance of counsel because his attorney failed to tender a jury instruction on the affirmative defense of voluntary intoxication and failed to request that the issues instruction for burglary be modified to reflect that affirmative defense. Since there was both a legal and factual basis for giving those instructions, defendant argues, he was entitled to the pattern jury instructions on voluntary intoxication. Moreover, defendant contends, defense counsel's failure to tender the intoxication defense instructions was particularly prejudicial in light of the prosecutor's clos-

ing argument misstating the law regarding the defense and the difficulty the jury had in reaching a verdict.

Defendant relies on *People v. Wright* (1986), 111 Ill. 2d 18, 30-31, where the defense counsel did not understand the affirmative defense of voluntary intoxication. The trial court stated during the post-conviction hearing that it would not have convicted the defendant if it had heard the evidence of his substance abuse and expert testimony of the effect of mixing alcohol with drugs. The trial court, however, had heard evidence of the defendant's excessive drinking and taking tranquilizers as well as his intoxicated appearance before the shooting. *Wright*, 111 Ill. 2d at 21-22.

The State responds that the jury heard ample evidence and argument about the voluntary intoxication defense from which it could have acquitted defendant even though there was no instruction. The State attempts to distinguish *Wright*, stating that there was no evidence in this case that defense counsel misunderstood the intoxication defense since he elicited testimony about defendant's intoxication during cross-examination of the State's witnesses and vigorously argued the defense of voluntary intoxication during his closing argument. Furthermore, the State comments, evidence of defendant's drinking problem was presented at the sentencing hearing.

■ There was sufficient evidence of defendant's extreme intoxication for the jury to reasonably find that defendant was so intoxicated at the time of the crime that he lacked the requisite mental state for the crime. (*People v. Arnold* (1984), 104 Ill. 2d 209, 214.) Burglary is a specific intent crime. One of its elements is the requirement that the defendant entered the premises with the intent to commit a theft or felony. (Ill. Rev. Stat. 1987, ch. 38, par. 19—1(a); *People v. Cabrera* (1987), 116 Ill. 2d 474, 492.) Under Illinois law, a person in an intoxicated condition is criminally responsible for his conduct unless such condition is "so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense." Ill. Rev. Stat. 1987, ch. 38, par. 6—3(a); *People v. Hillenbrand* (1988), 121 Ill. 2d 537, 555.

Although defendant raised this issue only as evidence of his attorney's ineffective assistance, we apply the plain error doctrine. The error was so substantial that it reflected on the fairness and impartiality of the trial. (*People v. Linscott* (1991), 142 Ill. 2d 22, 28.) Even if defendant had presented the voluntary intoxication defense throughout the trial, as the State asserts, he had no defense when his case went to the jury because the jury could never consider the defense. A jury reaches its verdict on the basis of the law given to it by the trial

court in its instructions, not from counsel's arguments. Instructing the jury on defendant's defense is not strategy. It is proper defense. Therefore, failure to give the intoxication defense instruction constituted reversible error. *Wright*, 111 Ill. 2d at 25-31; *People v. Feagans* (1983), 118 Ill. App. 3d 991, 997.

■ This error was compounded by the State's improper closing argument remarks analogizing this case to reckless homicide scenarios:

"If you have a few drinks and you get behind a wheel of a car and have an accident or hit somebody, are you any less responsible for what you do? You are still responsible, and you know what to do."

In its rebuttal, the prosecution stated:

"People who have been intoxicated sometimes they don't think and do things that are appropriate \*\*\*. We suggest to you that sometimes they even steal. Does that make it all right because he was drunk, that he was in Mr. Evans' tavern, stealing Mr. Evans' property? Of course not. That is like suggesting to you reasonable people that if somebody goes to a party and gets drunk and on their way home in the inebriated condition they run into a family and within four or five minutes the family will excuse them [(defense objection overruled)] \*\*\* that criminal conduct because they are drunk?"

In reckless homicide cases, being under the influence of alcohol at the time of the alleged offense is *prima facie* evidence of a reckless act. (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(b).) Since the reckless homicide statute excludes voluntary intoxication as a possible defense, the prosecution's analogies to vehicular reckless homicide were misstatements of the law and should have been stricken.

Defendant then asserts that during the rebuttal closing argument, the State erroneously vouched for the credibility of the arresting officer, who was the only eyewitness to the crime. In referring to Officer Shenberger's inability to make an in-court identification of defendant, the prosecution stated in its rebuttal closing argument:

"Policemen aren't stupid. However, this one happened to be extremely honest in my humble opinion [(defense objection overruled)] \*\*\* [Shenberger] looked around [the courtroom] and said, I can't pick him out. That is honesty. That is not somebody who gets up and tells you a lie. He is telling you the truth. [(Defense objection overruled.)] \*\*\* The fact of the matter is the man was candid and honest."

The State contends that those comments were proper because the jury had to resolve a credibility battle between the police and defendant. Furthermore, the State argues, defense counsel invited the remarks by attacking Shenberger's credibility during closing argument.

The State cites *People v. Cox* (1990), 197 Ill. App. 3d 1028, 1041, where the court ruled that the error was harmless because the prosecutor did not comment on her personal or professional beliefs in the credibility of the witnesses and the comments were invited by the defense counsel's comments. After the defense counsel attacked the credibility of two State witnesses, the prosecutor in rebuttal commented that neither witness would risk his job by lying and that they simply were doing their jobs. *Cox*, 197 Ill. App. 3d at 1041.

In *People v. Pryor* (1988), 170 Ill. App. 3d 262, 273, the court concluded that the prosecutor's comments, that the State's police officer witness was believable and correct, were within the bounds of permissible comments. While it is improper for the State to place the integrity of the State's Attorney's office behind the credibility of a witness, the court concluded, the State may discuss the witnesses and their credibility and is entitled to assume the truth of the State's evidence. *Pryor*, 170 Ill. App. 3d at 273.

■ *Cox* and *Pryor* are distinguishable from this case. Unlike those cases, the prosecutor here stated that Shenberger was "extremely honest in my humble opinion." Because that comment was the prosecutor's personal belief in the witness' credibility, it was improper and prejudicial.

It is prejudicial error for the prosecutor to express personal beliefs or opinions, or invoke the integrity of the State's Attorney's office, to vouch for the credibility of a prosecution witness. (*People v. Wilson* (1990), 199 Ill. App. 3d 792, 795-96; *People v. Valdery* (1978), 65 Ill. App. 3d 375, 378.) It is solely the jury's duty to determine the credibility of the witnesses, not the privilege of the prosecutor. (*Wilson*, 199 Ill. App. 3d at 796; *Valdery*, 65 Ill. App. 3d at 378.) It is impossible to determine whether the jury exercised its independent judgment to assess Shenberger's credibility or was swayed towards its natural inclination to accept the word of the prosecution. *Wilson*, 199 Ill. App. 3d at 796.

The trial court compounded the error by overruling defense counsel's objections and advising the jury that "it is appropriate argument." When counsel's argument is prejudicial, it should be terminated by the trial court *sua sponte* and the jury instructed to disregard it. *People v. Ray* (1984), 126 Ill. App. 3d 656, 664.

Considering the context of the language used, its relation to the evidence, and the effect of the argument on the rights of defendant to a fair and impartial trial (*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 164), we conclude that the jury could have reached a different verdict had the improper comments not been made. (*People v. War-mack* (1980), 83 Ill. 2d 112, 128-29.) Because Shenberger was the only occurrence witness, his testimony and credibility were crucial to the State's case. The jurors had serious questions about that testimony. They asked four questions during their deliberations related to Shenberger's testimony and his police report. Consequently, the State's comments vouching for Shenberger's credibility were prejudicial error.

■ Defendant waived his argument that he was denied a fair trial because the modified pattern jury instruction on the use of prior inconsistent statement evidence confused and misled the jury since he did not object to the tendered instruction at trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

■ We will not discuss defendant's assertion that the evidence was insufficient to prove beyond a reasonable doubt that he entered the tavern with the intent to commit theft. Part of his argument is that he was too intoxicated to form the specific intent to commit a burglary or to have removed the window. Since the jury did not consider defendant's intoxication as an affirmative defense, we have ordered a new trial. If evidence of defendant's intoxication is presented at trial, the jury is to be instructed on the voluntary intoxication defense.

Since we have reversed defendant's conviction, we will not address the sentencing issue raised by defendant.

Based on the foregoing, defendant's conviction is reversed and remanded for a new trial.

Reversed and remanded.

RIZZI and TULLY, JJ., concur.