THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALCURTIS JACKSON, Defendant-Appellant.

First District (3rd Division) No. 1—97—1078

Opinion filed September 9, 1998.—Rehearing denied October 5, 1998.

Maria A. Harrigan, of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Jennifer Sharma, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

In 1991, defendant, Alcurtis Jackson, pleaded guilty to heinous battery (720 ILCS 5/12—4.1(a) (West 1994)) and was sentenced to 20 years' imprisonment. On direct appeal from the denial of defendant's motion to vacate his guilty plea and dismissal of his postconviction petition, this court remanded the cause for a hearing on defendant's motion to withdraw his guilty plea. On remand, the trial court allowed defendant to withdraw his guilty plea and the case proceeded to a jury trial. Following the jury trial, defendant was again convicted of heinous battery and was sentenced to 45 years' imprisonment.

On appeal, defendant asserts that (1) he was denied a fair trial because the State repeatedly shifted the burden of proof, improperly undermined defendant's credibility, and improperly bolstered the credibility of the State's witnesses; (2) the trial court improperly allowed the State to impeach defendant with a prior felony conviction that was more than 10 years old; (3) the cumulative effect of trial errors denied defendant a fair trial; (4) there was no legal basis for the extended sentence; and (5) the sentence was excessive. For the following reasons, we affirm the conviction and reduce defendant's sentence to 30 years' imprisonment.

At 4:15 p.m. on August 29, 1990, while driving in the area of 1455

West Madison Street, Chicago, Chicago police officer Lynn Casey saw a black man, who was later identified as Daniel Davis, running across the street. His pants were around his ankles and he was screaming, "Help me, help me. He poured acid on me." Officer Casey noticed liquid on Davis's upper body and blood dripping from his head. His clothes were disintegrating off his body, and there were burn holes in his shirt and pants.

Officer Casey got Davis into the squad car and drove him to the hospital. On the way, Davis continued to scream, "Help me, help me. Curtis did this. Curtis poured acid on me," as his clothes were being eaten away. In response to Casey's attempts to elicit as much information as possible, Davis told Casey that Curtis approached him at the jitney cabstand where they both worked and called, "Hey, 19," which was Davis's cab number. When Davis turned around, Curtis poured acid on him.

Officer Casey also testified that there was blood streaming from different areas of Davis's arms, upper body, and face, and a very foul odor was emanating from him as if his flesh was burning. After Officer Casey delivered Davis to the hospital, she noticed burn marks and globs of flesh on the backseat of her squad car. Based on her conversation with Davis, Officer Casey began looking for a black male cab driver named Curtis.

Dr. Williams told the jury that Davis initially had superficial, partial, and full thickness chemical burns over 23% of his body. As chemical burns often do, Davis's injuries continued to worsen over time to full thickness, which meant that the skin was completely destroyed and would not be able to spontaneously heal itself. When a burn is caused by a chemical, it continues to penetrate through the skin until the body's own defenses neutralize it. Therefore, the duration of the contact cannot be controlled very well. Eventually, Davis's burns covered 28% of his body.

Dr. Williams further stated that there were burns on Davis's face, neck, ears, chest, and back. In addition, Davis's neck wounds contracted as they healed, which rendered him unable to fully move his head. Based on the coverage, area, overall appearance of the wounds, and Davis's explanation of what had happened, Dr. Williams determined that Davis suffered from chemical caustic burns. Dr. Williams removed the burned tissue and grafted healthy skin taken from other parts of Davis's body. After receiving two separate grafts, Davis was discharged from the hospital in October 1990. He died two years later from unrelated causes.

Chicago police detective William Calabrese interviewed Davis in the hospital at 9 p.m. on August 29, 1990. After speaking with Davis,

who had burns on his face, neck, and chest and who was in a lot of pain, Detective Calabrese went to the jitney cabstand at 1455 West Madison Street. There, he recovered a burned T-shirt that Davis had been wearing.

Alan Osaba, a forensics scientist, performed pH and chemical tests on the torn T-shirt. The test results revealed the presence of sulfuric acid, which is an inorganic mineral acid that is very reactive and highly corrosive. Sulfuric acid dissolves metal and destructively attacks organic material such as cloth and living organic tissue. There was no muriatic acid on the T-shirt.

Chicago police detective James Capesius testified that he located defendant at 4:10 a.m. on August 30, 1990, near the jitney cabstand. When Detective Capesius approached defendant and asked him his name, defendant responded, "[T]hey call me Curtis. I got into it with number 19." Defendant was arrested, read his *Miranda* rights, and taken to the police station, where he told Detective Capesius that he and Davis had had an argument on August 18 after which Davis "sicced" his son and five other men on defendant. When the six men approached him while armed with tire irons, defendant pulled a straight razor and ran from the area. As he was running away, he was hit on the arm with a chunk of brick or concrete. Later that day, defendant went to a store and bought muriatic acid. The next day, he walked up behind Davis, who was standing in front of the cabstand. When Davis turned around, defendant threw the acid in his face because he wanted to get even for Davis's son's actions. There was no written or court-reported statement.

In his own behalf, defendant testified that he and Davis had worked as cab drivers for the Big Four livery cabstand. On August 28, 1990, defendant and Davis were in front of the cabstand waiting for work. Davis and another cab driver entered into a signifying match, an insult contest where the goal is to exchange outrageous insults to get laughs. After defendant got involved, Davis got angry and left.

Around 5 p.m., Davis returned with his son and five other men. Davis and the others walked toward defendant while carrying car jacks, baseball bats, iron pipes, and crowbars. Davis ordered the six men to kill defendant, who pulled his straight razor and ran away. As he ran, he got hit in the arm with a brick or rock. Defendant further testified that he went to the Racine Avenue police station to inquire about getting a peace bond (order of protection) against Davis.

Defendant returned to the cabstand at 9 a.m. on August 29, 1990, but left to repair his car because business was slow. He went to a junkyard located at Talman and Lake, talked with the junk man and bought a replacement part for his starter. He installed the part at a

nearby tire shop and returned to the cabstand at 5 p.m., at which time he heard about the attack on Davis. On cross-examination, the prosecutor asked defendant why the junkyard operator was not testifying on his behalf.

Defendant denied throwing acid on Davis and denied that he told the police he went to a store and bought acid. Detective Capesius told defendant he could get a peace bond if he admitted involvement in the acid attack. Eventually, defendant told the police, "Yeah, I did it," then asked for his peace bond. The police left and returned with Assistant State's Attorney Perkaus, who told defendant that he could get a peace bond and could go home because the attack was in self-defense as long as he admitted involvement in the acid attack. Defendant refused to admit involvement and was taken to the lockup.

In rebuttal, the State presented a certified copy of defendant's prior felony conviction. Detective Capesius stated that neither he nor Assistant State's Attorney Perkaus told defendant that he could get a peace bond and would be able to go home if he admitted involvement.

During the jury deliberations, the jury sent two notes to the judge requesting transcripts and two notes indicating that they were deadlocked. After receiving the transcripts, the jury continued to deliberate, eventually finding defendant guilty of heinous battery. Subsequently, defendant was sentenced to 45 years' imprisonment.

Defendant first argues that the State's remarks in rebuttal closing argument and cross-examination of defendant shifted the burden of proof to defendant, improperly undermined defendant's credibility, and improperly bolstered the credibility of the State's witnesses, thereby denying defendant his right to a fair trial. Specifically, defendant alleges that the State: (1) mischaracterized the defense theory as a conspiracy between the police department, the State's Attorney's office, and the victim; (2) ridiculed the misstated theory by commenting that the officers and assistant State's Attorneys would not put their jobs on the line by lying; (3) improperly cross-examined defendant about his failure to call the junkyard operator and argued that point in its closing argument; and (4) told the jury that defendant had reason to lie and six years to make up his story.

Defendant has waived those alleged errors because he failed to preserve them with a contemporaneous objection despite including them in his posttrial motion. *People v. Cloutier*, 156 Ill. 2d 483, 507, 622 N.E.2d 774 (1993). Even if not waived, however, the State's closing argument remarks and cross-examination of defendant were not reversible error.

Prosecutors are afforded wide latitude in closing argument, and improper remarks will not merit reversal unless they result in

substantial prejudice to the defendant, considering the context of the language used, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. *People v. Smith*, 141 Ill. 2d 40, 60, 565 N.E.2d 900 (1990); *People v. Thompkins*, 121 Ill. 2d 401, 445, 521 N.E.2d 38 (1988). Moreover, closing argument comments that may be improper do not constitute reversible error unless they result in substantial prejudice to the defendant such that absent those remarks the verdict would have been different. *People v. Hudson*, 157 Ill. 2d 401, 441, 626 N.E.2d 161 (1993); *People v. Linscott*, 142 Ill. 2d 22, 28, 566 N.E.2d 1355 (1991).

The first complained-of comment is that the prosecutor argued that the defense theory consisted of an accusation that the State's witnesses were involved in a conspiracy against defendant. Defendant contends that the State argued that the jury had to believe all the State's witnesses were lying in order to acquit defendant.

■ It is improper for a prosecutor to distort the burden of proof by incorrectly arguing to the jury that it must find the State's witnesses were lying in order to acquit the defendant. *People v. Ridley*, 199 Ill. App. 3d 487, 493, 557 N.E.2d 378 (1990). However, that is not what the State said in its closing argument. The remarks made by the State regarding a conspiracy were in response to the defense counsel's remarks that the detectives fabricated evidence and lied to defendant. Moreover, the State did not tell the jury that it had to believe that all the State's witnesses were lying in order to acquit defendant. We find there was no error.

A similar case is *People v. Hrobowski*, 216 Ill. App. 3d 711, 728, 575 N.E.2d 1306 (1991), where the State called the defendant's self-defense theory "the greatest conspiracy since the Kennedy assignation [*sic*]." The reviewing court found that the comments were not reversible error because, when viewed in the correct context, it was clear that the State was simply attempting to impeach the credibility of the defendant's testimony. *Hrobowski*, 216 Ill. App. 3d at 728-29.

The second complained-of comment is that the State improperly argued that the police and assistant State's Attorney would not put their jobs on the line by entering into a conspiracy against defendant. Where prosecutors expressly or impliedly vouch for the integrity and credibility of their key witnesses and express their personal belief in their witness's testimony, the appellate court has found such remarks to be highly prejudicial and to have deprived the defendant of a fair and impartial trial. *People v. Wilson*, 199 Ill. App. 3d 792, 797, 557 N.E.2d 571 (1990).

However, in this case, the comment was made in response to the defense counsel's argument that the detectives fabricated evidence in

order to charge defendant with the crime and lied to defendant to get him to confess. In contrast to those cases where the prosecutor pledged his personal and professional reputation as proof of the integrity and character of the State's witnesses (see *People v. Lee*, 229 Ill. App. 3d 254, 260, 593 N.E.2d 800 (1992); *People v. Valdery*, 65 Ill. App. 3d 375, 378, 381 N.E.2d 1217 (1978)), the witness himself was the assistant State's Attorney whose professional status was brought to the jury's attention as a proper means to counter defendant's attack on his credibility (*People v. Adams*, 111 Ill. App. 3d 658, 667, 444 N.E.2d 534 (1982)). The prosecutor's remarks about the credibility of the police officers and the assistant State's Attorney in this case were improper but were harmless error because they were invited by the defense counsel's remarks and the prosecutor did not comment on his personal belief in the credibility of the officers and the assistant State's Attorney.

■ Next, defendant argues that the prosecutor shifted the burden of proof when she cross-examined defendant about his failure to call an alibi witness. We disagree. Defendant's alibi defense was that he was buying parts at a junkyard located at Talman and Lake and talking with the junk man at the time of the offense. The State cross-examined defendant about his failure to call the junkyard operator as a witness and the court sustained defendant's objection.

Defendant relies on *People v. Lopez*, 152 Ill. App. 3d 667, 679, 504 N.E.2d 862 (1987). In *Lopez*, the State's remarks constituted more than comments that the defendant had not presented evidence to support his suggested alibi. *Lopez*, 152 Ill. App. 3d at 679. There was no foundation for the State's remarks; the defendant did not name any specific persons in his opening argument; and the names read off by the State appeared in various pretrial discovery documents not in evidence. The first mention of those people occurred when the State introduced them in its closing rebuttal argument. Naming the 11 witnesses not only suggested that they would have testified unfavorably against the defendant, but the State's further remark, "Where are those people that can clear the defendant," shifted the burden of proof to the defendant. The statements were substantially prejudicial. *Lopez*, 152 Ill. App. 3d at 679.

We find that defendant's interjection of the junkyard operator at Talman and Lake as a possible alibi witness comes under the alibi witness exception even though defendant did not give the junkyard operator's name but instead gave the address where he could be located. *People v. Colts*, 269 Ill. App. 3d 679, 695-96, 645 N.E.2d 225 (1993). While it is improper for the prosecution to comment on a defendant's failure to call a witness who is equally available to the

prosecution, such a comment is not improper if the witness is an alibi witness or if the witness is not equally available. *People v. Morando*, 169 Ill. App. 3d 716, 735, 523 N.E.2d 1061 (1988). Therefore, the State's cross-examination and closing argument remarks were not improper.

Defendant also complains of the State's remarks during rebuttal closing argument:

"Don't you think *** that if it wasn't this defendant, you would have heard about it? He would have said something to someone. *** If there was anything else *** believe, me, the defense attorneys would have brought those people in to tell you."

The court sustained defense counsel's objections to those comments.

■ We find that the State's remarks were invited by the defense counsel's comment. In its closing argument, the defense counsel argued that the State did not present witnesses from the crime scene who had been interviewed, thus insinuating that the State was concealing material witnesses and withholding relevant evidence. Since the prosecutor was merely responding to such insinuations, no error was committed by the State's remarks. The State may comment on a defendant's failure to call witnesses when they are made solely in response to defense counsel's own reference to the State's failure to call those witnesses. *People v. Richardson*, 123 Ill. 2d 322, 355, 528 N.E.2d 612 (1988); *People v. Griffin*, 247 Ill. App. 3d 1, 8, 616 N.E.2d 1242 (1993).

■ Finally, defendant asserts that the State improperly commented on his motive to lie. We disagree. The State may argue that the defendant has an interest or bias in being found not guilty. *People v. Barney*, 176 Ill. 2d 69, 73, 678 N.E.2d 1038 (1997).

Defendant's next assertion is that his 1984 felony conviction was improperly presented because it was more than 10 years old at the time of trial in 1995. Moreover, defendant contends that the trial court failed to balance the prejudice of the conviction against its probative value, as required by *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971).

■ In *Montgomery*, 47 Ill. 2d at 515, the Illinois Supreme Court provided trial courts with the discretion to allow impeachment of a witness's testimonial credibility by admitting a prior conviction. More specifically, the *Montgomery* rule provided that, for the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible only if the crime (1) was punishable by death or imprisonment in excess of one year or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the trial court determines that the probative value of the evidence of

the crime is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d at 516. In addition, evidence of a conviction under this rule is inadmissible if more than 10 years has elapsed since the date of conviction or release of the witness from confinement, whichever is later. *Montgomery*, 47 Ill. 2d at 516. There is no error if the trial court does not expressly articulate the balancing test as long as the trial transcript made clear that the trial judge was applying the *Montgomery* standard. *People v. Williams*, 173 Ill. 2d 48, 83, 670 N.E.2d 638 (1996).

The State relies on *People v. Reddick*, 123 Ill. 2d 184, 198-99, 526 N.E.2d 141 (1988), where the defendant's conviction was reversed because the instructions did not apprise the jury of the State's burden of proof. The court also found and the parties agreed that the trial court improperly excluded the prior felony conviction of a prosecution witness for impeachment purposes because it erroneously calculated that it was too old. *Reddick*, 123 Ill. 2d at 203. On retrial, the trial court had broad discretion in deciding whether the prior felony conviction was more prejudicial than probative, but the 10-year *Montgomery* rule could not be used to exclude the evidence. *Reddick*, 123 Ill. 2d at 203. The supreme court instructed that if the conviction should have been admitted previously, then it must be admitted on retrial. *Reddick*, 123 Ill. 2d at 203.

Defendant argues that *Reddick* does not apply because the appellate court in this case determined that his guilty plea was invalid. Moreover, defendant maintains that the prior conviction in *Reddick* was admissible at the first trial whereas his first trial occurred more than 10 years after his prior conviction and it was not a certainty that the conviction would have been admissible at the time of his guilty plea because no balancing test was employed at that hearing.

Defendant's prior felony conviction occurred in 1984 and he received 30 months' probation. His conviction for this case occurred in 1991 pursuant to a plea agreement, and his jury trial after remandment from the appellate court occurred in 1995. After the trial court determined that the prior conviction occurred within 10 years of his guilty plea, it decided that the prior conviction could be entered into evidence in the trial, but the nature of the crime would not be revealed to the jury.

We believe that defendant's prior felony fell within the 10-year rule. This case can be analogized to *Reddick* even though defendant's guilty plea was found to be invalid. In *Reddick*, the defendant's conviction was invalid and at his second trial his old prior conviction was properly received in evidence.

We find, however, that the trial court erred by failing to conduct

the requisite balancing test. There is nothing in the record, in either the court's words or in any argument made by the parties to the court, that indicates that the balancing test was considered. Instead, the court merely considered whether the prior felony fell within the 10-year rule. Nevertheless, the error was harmless, especially since the jury was not informed of the nature of the prior felony, but only that defendant had previously been convicted of a felony. Also, the evidence of defendant's guilt was overwhelming. Any prejudice to defendant would not outweigh the probative value of the prior felony conviction in considering defendant's credibility.

■ Finally, defendant raises several sentencing issues, which he waived by failing to file a written postsentencing motion to reduce his sentence. 730 ILCS 5/5—8—1(c) (West 1994); *People v. Reed*, 177 Ill. 2d 389, 393, 686 N.E.2d 584 (1997). A defendant waives review of his sentence unless he objects during the sentencing hearing and files a timely postsentencing motion. *Reed*, 177 Ill. 2d at 393. Despite the waiver, we will consider defendant's sentence for possible plain error.

We find that the trial court improperly imposed an extended-term sentence on the basis that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty because it was double enhancement. 730 ILCS 5/5—5—3.2(b) (West 1992). Heinous battery by definition is heinous. Heinous battery is committed when:

> "(a) A person who, in committing a battery, knowingly causes severe and permanent disability or disfigurement by means of a caustic or flammable substance commits heinous battery." 720 ILCS 5/12—4.1(a) (West 1994).

In evaluating the brutality or heinousness of the conduct, the trial court must evaluate the entire nature of and all the facts surrounding the incident. *People v. Champs*, 273 Ill. App. 3d 502, 510, 652 N.E.2d 1184 (1995); *People v. Hartzol*, 222 Ill. App. 3d 631, 651, 584 N.E.2d 291 (1991). Behavior is heinous if it is hatefully or shockingly evil, grossly bad, or enormously and flagrantly criminal. *People v. La Pointe*, 88 Ill. 2d 482, 501, 431 N.E.2d 344 (1982). Brutal behavior is grossly ruthless, devoid of mercy or compassion, or cruel and cold-blooded. *La Pointe*, 88 Ill. 2d at 501. As we have stated, heinous battery is by definition heinous. Because we believe that defendant's extended-term sentence was double enhancement, we are reducing defendant's sentence to 30 years' imprisonment, which is the maximum nonextended-term sentence possible. 730 ILCS 5/5—8—1(a)(3) (West 1994).

■ The next sentencing issue is whether defendant can be sentenced to more than 20 years' imprisonment on remand since he

was originally sentenced to 20 years' imprisonment after pleading guilty.

In *North Carolina v. Pearce*, 395 U.S. 711, 725-26, 23 L. Ed. 2d 656, 669-70, 89 S. Ct. 2072, 2080-81 (1969), the United States Supreme Court limited the power of a sentencing court to increase a sentence after reconviction following a new trial. It held that the due process clause of the fourteenth amendment prevented increased sentences when that increase was motivated by vindictiveness on the part of the sentencing judge. Vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial. *Texas v. McCullough*, 475 U.S. 134, 138, 89 L. Ed. 2d 104, 110, 106 S. Ct. 976, 978 (1986). Therefore, whenever a judge imposes a more severe sentence on a defendant after a new trial, the reasons for doing so must affirmatively appear on the record. Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose. *Pearce*, 395 U.S. at 726, 23 L. Ed. 2d at 670, 89 S. Ct. at 2081. However, that presumption does not apply in every case where a convicted defendant receives a higher sentence on retrial. *McCullough*, 475 U.S. at 138, 89 L. Ed. 2d at 111, 106 S. Ct. at 979. The *Pearce* rule has been limited to circumstances in which there is a reasonable likelihood that an increase in sentence is the product of actual judicial vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799, 104 L. Ed. 2d 865, 872-73, 109 S. Ct. 2201, 2204-05 (1989). Where there is no such reasonable likelihood, the burden remains on the defendant to prove actual vindictiveness. *Smith*, 490 U.S. at 799-800, 104 L. Ed. 2d at 873, 109 S. Ct. at 2205. There is no presumption of vindictiveness when a second sentence imposed after a trial is greater than a first sentence imposed after a guilty plea. *Smith*, 490 U.S. at 802, 104 L. Ed. 2d at 874, 109 S. Ct. at 2206. The Court explained that there are several justifications for the second greater sentence, including that a guilty plea in itself may justify leniency, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial, the judge may gather a fuller appreciation of the nature and extent of the crime during a trial, and the defendant's conduct during trial may give the judge insight into his moral character and suitability for rehabilitation. *Smith*, 490 U.S. at 801, 104 L. Ed. 2d at 874, 109 S. Ct. at 2206.

Defendant agreed to plead guilty of heinous battery in exchange for a sentence of 20 years' imprisonment. On remand from his successful appeal, defendant was allowed to withdraw his guilty plea and proceed to trial on the charge. After being found guilty by a jury, defendant was sentenced to more than 20 years' imprisonment. There is nothing in the record to indicate that there was a reasonable likeli-

hood that an increase in his sentence was the product of actual judicial vindictiveness by the second sentencing judge, who was different than the first sentencing judge. Since there is no such reasonable likelihood, the burden remains on defendant to prove actual vindictiveness, which he has failed to do. Therefore, there was no due process violation when the trial court imposed a sentence greater than 20 years' imprisonment.

■ The defendant also argues that the trial court could not sentence him for more than 20 years because of the prohibition contained in the Unified Code of Corrections (730 ILCS 5/5—5—4 (West 1994)), which states:

> "Resentences. Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing." 730 ILCS 5/5—5—4 (West 1994).

The commentary to this statute states that it sets out the rule adopted in *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), and followed by Illinois in *People v. Baze*, 43 Ill. 2d 298, 253 N.E.2d 392 (1969). The statute became effective January 1, 1973.

*Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865, 109 S. Ct. 2201 (1989), limited the holding of *North Carolina v. Pearce*. *Alabama v. Smith* held that where a guilty plea is withdrawn and a defendant is given a greater sentence after a trial, there is no longer a presumption of vindictiveness on the part of the sentencing judge. The burden is on the defendant to prove vindictiveness.

■ The reasoning in *Alabama v. Smith* was followed in Illinois by *People v. Garcia*, 179 Ill. 2d 55, 688 N.E.2d 57 (1997). Since *Alabama v. Smith* and *People v. Garcia*, in Illinois a defendant can be given a more severe sentence after the defendant's plea of guilty is withdrawn and he is found guilty after a trial. However, he cannot be given a more severe sentence if he proves vindictiveness on the part of the judge or there is a statutory prohibition.

Section 5—5—4 was applied by agreement of the State and the defendant in the case of *People v. McCutcheon*, 68 Ill. 2d 101, 368 N.E.2d 886 (1977), to give the defendant the same sentence after trial as he had received after a plea of guilty. In that case on direct appeal, the appellate court vacated the guilty plea. We note that the council commentary summary of section 5—5—4 states that it: "Limits the use of

increased sentences where an original conviction or sentence has been overturned by a higher court." 730 ILCS Ann. 5/5—5—4, Council Commentary, at 678 (Smith-Hurd 1997). We believe that the prohibition of a more severe sentence "[w]here a conviction or sentence has been set aside on direct review or on collateral attack" applies where a court of review vacates a plea of guilty, as in the case of *People v. McCutcheon*, 68 Ill. 2d at 108.

In *People v. Adams*, 169 Ill. App. 3d 312, 523 N.E.2d 223 (1988), the trial court granted the defendant's motion to withdraw his guilty plea. After a trial, he was given a more severe sentence. On appeal, the court held that there had not previously been direct review of the original conviction or sentence and no collateral attack had been made. Therefore, section 5—5—4 did not apply and a more severe sentence was upheld. In *People v. Miller*, 286 Ill. App. 3d 297, 676 N.E.2d 309 (1997), after pleas of guilty, the appellate court remanded the cause for the proper admonishments to be given and to allow the defendant to file a new post-plea motion. On remand, the defendant was granted leave to withdraw his guilty pleas. After additional proceedings took place, the defendant pleaded guilty and was given more severe sentences than the first time. On appeal, the court held that: "Since in this case the defendant's guilty plea was vacated by the trial court, his conviction was not overturned by a higher court as required in order for section 5—5—4 to apply." *Miller*, 286 Ill. App. 3d at 302. The more severe sentence was upheld. In *People v. Pierce*, 80 Ill. App. 3d 514, 400 N.E.2d 62 (1980), the defendant was found guilty after a bench trial. The defendant's posttrial motion was granted. After a second bench trial, he was again found guilty and given a more severe sentence. The court held that section 5—5—4 precluded a more severe sentence. The court stated that section 5—5—4 was applicable even though the first conviction was set aside upon a motion for a new trial rather than by "direct appellate review or collateral attack." *People v. Pierce*, 80 Ill. App. 3d at 515.

In this case, the trial court allowed defendant to withdraw his guilty plea. Defendant's conviction and sentence was not set aside on direct review or collateral attack. Therefore, the statutory prohibition contained in the Unified Code of Corrections (730 ILCS 5/5—5—4 (West 1994)) is not applicable. After a jury trial the trial court could exercise discretion and give defendant a more severe sentence. We find *People v. Adams* and *People v. Miller* persuasive and decline to follow *People v. Pierce*.

Based on the foregoing, we affirm the conviction and reduce defendant's sentence to 30 years' imprisonment.

Affirmed in part; sentence reduced.

WOLFSON and SOUTH, JJ., concur.