# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-1892

IVORY SMITH,

*Petitioner-Appellant,*

v.

KEVIN L. WINTERS,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 97 C 50323—**George M. Marovich**, *Judge*.

ARGUED JUNE 11, 2003—DECIDED JULY 28, 2003

Before POSNER, COFFEY, and RIPPLE, *Circuit Judges*.

POSNER, *Circuit Judge*.  In 1983 Ivory Smith and his step-brother burglarized a home occupied by an elderly woman, who in the course of the burglary was murdered by one of the burglars, each of whom confessed to the burglary but claimed that the other was the killer. Both were prosecuted and (in separate trials) were convicted of felony murder. Smith was sentenced to 60 years in prison, the stepbrother to life. After protracted state court proceedings, Smith filed a petition for federal habeas corpus that the district court dismissed on procedural grounds without reaching the merits. This appeal ensued. The parties have briefed the

merits as well as the soundness of the district court's procedural ruling.

Smith, who is black, contends that he was denied due process of law at his criminal trial because of prosecutorial misconduct during selection of what turned out to be an all-white jury. He contends that during the jury voir dire the prosecutor drew swastikas on the case files that were lying on the counsel table in front of him and that his action was visible to the jury; that the judge summoned both counsel to the bench to admonish the prosecutor; and that the prosecutor said to the judge in the hearing of the jury, "Is it all right if I draw a little old lady and a house?" There is no corroboration of these contentions, but for the moment we shall assume that they are true.

In his state postconviction petition Smith had made the allegations that we have just recited and had further stated that the remark about the old lady had infringed his right to a fair trial, but he had not stated that the display of the swastikas had infringed his right to a fair trial. The state trial court denied his petition and in affirming the state appellate court said that Smith had forfeited his claim relating to the swastikas because he had not argued that the prosecutor's "drawing of swastikas was prejudicial."

In other words, the state appellate court characterized the two factual allegations in Smith's petition—the swastikas and the old-lady remark—as belonging to different legal claims, one of which the petition had failed to make and therefore had forfeited. This is a crabbed and indeed an unreasonable interpretation of the petition, which under the heading "prosecutorial misconduct" states that the swastikas "were in plain view of the Jury as it was being selected," that the trial judge summoned counsel to the bench, and that the prosecutor made the old-lady remark, which Smith "believes . . . was heard by the Jury and inflammatory in

nature . . . [and] if the Jury heard the comment . . . it would have so prejudiced the Jury as to deny the Defendant the Right to a fair trial." It seems clear that Smith was claiming that the swastikas as well as the old-lady remark constituted prosecutorial misconduct; the alternative interpretation, that the swastikas were mentioned just to indicate the background to the old-lady remark, strikes us as unreasonable.

Now it is true that the application, however unreasonable it may seem, of a state-law doctrine, here that of forfeiture, is an error merely of state law, and a federal judge in a habeas corpus proceeding has no authority to correct such errors. E.g., *Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir. 1992); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). But when the application is so surprising, unanticipated, unprecedented, unforeseeable, and indeed freakish as not to be foreseeable by the petitioner, its existence will not block him from pressing his federal claims in his federal habeas corpus proceeding. *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457 (1958); *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000); *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003); *White v. Bowersox*, 206 F.3d 776, 781 (8th Cir. 2000). It will not, in the accepted formula, be deemed an *adequate* state ground upon which to uphold the state court's judgment. It is unreasonable to hold that as a precondition to being able to litigate constitutional claims a prisoner must comply with a state procedural requirement of which he lacks, and could not by the exercise of reasonable diligence have acquired, knowledge. Anyone in Smith's position would have assumed that a narrative of prosecutorial misconduct that included the bizarre detail of a prosecutor drawing swastikas in full view of the jury during voir dire was a complaint about that conduct and not just about the prosecutor's subsequent flippant remark.

So we proceed to the merits, where we can be brief. There are two independent grounds on which Smith must lose.

The first is that he has failed to substantiate his allegations of prosecutorial misconduct. Ordinarily an affidavit alleging matters that are both within the personal knowledge of the affiant and germane to a vital issue creates a genuine issue of material fact, but not where the allegations are so far improbable as to verge on the fantastic and could if true be corroborated but no effort at corroboration is made. Smith should long ago have sought supporting affidavits from his trial counsel, the trial judge, and the jurors. His failure to do so, when coupled with the fact that the trial transcript provides no support for his allegations, is strongly suggestive of fabrication. It is highly unlikely that a prosecutor however unscrupulous would suppose that his cause would be advanced by exhibiting swastikas to prospective jurors. Nazis are not popular in Illinois and a prosecutor who identified himself as one to jurors would be impairing rather than promoting the likelihood of a conviction. Cf. *State v. Molasky*, 655 S.W.2d 663, 670 (Mo. App. 1983).

Even if this analysis is wrong—and even if the allegations are true—Smith must lose because the prosecutor's misconduct could not have changed the outcome of the trial, provided the jury was rational. Having confessed to participation in the burglary, Smith had no defense to the charge of felony murder except intoxication, a palpable nonstarter. We can imagine a defense of intoxication succeeding in a case of burglary if the defendant proved he had been so drunk that he had thought he was breaking into his own house. See *Witherspoon v. State*, 671 S.W.2d 143, 144 (Tex. Crim. App. 1984); *Arroyo v. State*, 564 So.2d 1153, 1155 (Fla. App. 1990); *Hamilton v. State*, 324 N.E.2d 822, 823 (Ind. App. 1975); see also *People v. Lee*, 593 N.E.2d 800, 803 (Ill. App. 1992); *People v. Parker*, 343 N.E.2d 52, 54 (Ill. App. 1976). But that is not suggested and although the defense of intoxication was raised it was virtually abandoned when the evidence showed that although Smith had been drinking

and taking drugs, his actions were deliberate and his recollection of the event vivid. The jury could have acquitted Smith only if it decided to ignore the judge's instruction on the elements of felony murder—which in fact Smith's counsel invited the jury to do. A defendant has of course no right to ask the jury to disregard the judge's instructions ("jury nullification"). *Sparf v. United States*, 156 U.S. 51, 102 (1895); *Gibbs v. VanNatta*, 329 F.3d 582, 584 (7th Cir. 2003); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997); *United States v. Manning*, 79 F.3d 212, 219 (1st Cir. 1996). A defense that the law he is charged with violating is a bad law that the jury should refuse to enforce is no defense at all.

We are mindful that a prosecutorial tactic that invokes or relies on racial prejudice, such as striking prospective jurors on racial grounds, is reversible error without regard to the effect on the outcome. *Batson v. Kentucky*, 476 U.S. 79, 100 (1986); *Vasquez v. Hillery*, 474 U.S. 254, 264 (1986); *Smith v. Farley*, 59 F.3d 659, 663 (7th Cir. 1995). But if the alleged displaying of swastikas to jurors be deemed a racist tactic, on the ground that Nazis are notoriously racist, still the appeal to racial prejudice was too attenuated to preclude a determination of harmless error under the normal standard, that of *Brecht v. Abramson*, 507 U.S. 619 (1993), applicable to state trial errors challenged by means of federal habeas corpus. See *Smith v. Farley, supra*, 59 F.3d at 664; *Thomas v. Gilmore*, 144 F.3d 513, 518 (7th Cir. 1998); *Pickens v. Lockhart*, 4 F.3d 1446, 1453 (8th Cir. 1993); *Russell v. Collins*, 944 F.2d 202, 204 n.1 (5th Cir. 1991) (per curiam); *Soap v. Carter*, 632 F.2d 872, 876 (10th Cir. 1980). It is not as if the prosecutor had been wearing a white hood and singing "The Old Rugged Cross." Cf. *Miller v. North Carolina*, 583 F.2d 701 (4th Cir. 1978); *United States ex rel. Haynes v. McKendrick*, 481 F.2d 152 (2d Cir. 1973). A prejudiced remark or its symbolic equivalent is not a per se ground for reversal, as the cases

we have just cited show and others as well: *Darden v. Wainright*, 477 U.S. 168, 179-83 (1986); *Aliwoli v. Carter*, 225 F.3d 826, 831 (7th Cir. 2000); *Moore v. Morton*, 255 F.3d 95, 114 (3d Cir. 2001). Even if as we doubt the swastika incident actually occurred, still it was harmless so far as the outcome of the trial was concerned.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*