THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LONNIE RAY KINNEY, Defendant-Appellant.

Fourth District   No. 4—96—0448

Opinion filed March 2, 1998.

KNECHT, J., specially concurring.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Perry Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant Lonnie Ray Kinney was charged with three counts of aggravated criminal sexual assault for allegedly committing three acts of forcible sexual intercourse against A.B. in the early hours of August 26, 1995. 720 ILCS 5/12—14(a)(2) (West 1994). Defendant admitted having sex with A.B. at that time but denied using force. The central issue at trial was whether A.B. consented to having sex with defendant.

A.B. testified she met defendant at the Edsel bar in Champaign on the night of August 25, 1995, and had a few drinks with him. From there, A.B. and defendant decided to go for a ride in defendant's car. They drove to Hessel Park, parked the car, and walked through the park. The two sat down on a picnic table and talked. Defendant kissed A.B., but she pushed him away and said she had to get back to her friends. She told defendant she was married and did not cheat on her husband. Defendant insisted that A.B. not go, and when she turned away he grabbed the right side of her dress, ripping it. Defendant pushed A.B. back onto the picnic table, pulled down her dress and bra, and began squeezing her breasts. Defendant was kissing A.B. and pulled off her panties and hose. Defendant placed his fingers in A.B.'s vagina and anus, "telling [her] to shut up because [she] was trying to push him off of [her]." Defendant penetrated her vagina, her anus, and then her vagina again. During the vaginal penetration, A.B. tried to push defendant off her, unsuccessfully, because defendant is 6 feet 3 inches or 6 feet 4 inches and weighs about 260 pounds. The anal penetration hurt so much that A.B. was screaming for defendant to stop. A.B. testified her dress was torn, her anus was bleeding badly, and she had pains in her abdominal area, bruises on her breasts, and a scrape on her face from when defendant held her head down on the picnic table.

A.B. got back into the car with defendant and he drove her back to the Edsel. She testified that she got back in the car with defendant because her purse was in the car and she was afraid if she tried to

run or get away, defendant would pursue her and hurt her again. Defendant dropped A.B. off by the dumpsters at the Edsel at about 12:50 a.m. She went back inside the Edsel and found her friend, Martha. Martha testified A.B.'s hair looked a mess, she had been crying, her dress was torn, and she had a red mark on her cheek. A.B. did not tell Martha or anyone about the rape until the next morning when she told Martha over the telephone. Two days later, A.B. called the "Rape Crisis Hot Line." She underwent a physical examination that evening, which revealed bruises on her breasts, swollen and reddened labia, and two small tears on her rectum that were consistent with anal intercourse.

Defendant denied raping A.B. He claimed they drove to the park and walked to the picnic table. At the picnic table, A.B. performed oral sex on defendant. After that, defendant contends they had consensual vaginal intercourse. A.B. then performed oral sex on defendant again. After they were finished, they dressed and got back into defendant's car. Defendant drove A.B. to her car at the Mobile Super Pantry and dropped her off. Before she left, defendant got her phone number and kissed her good-bye.

When first questioned by police, defendant denied knowing A.B. or ever having sexual contact with anyone in Hessel Park. However, defendant later admitted to police that he knew A.B. and said he had consensual sex with her at Hessel Park. Defendant testified that he denied everything at first because he was in shock and nervous from being charged with such serious allegations.

Among the instructions given by the court were the following:

(1) The definitional instruction of "criminal sexual assault" provided:

"A person commits the offense of criminal sexual assault when he commits an act of sexual penetration upon the victim by the use of force or threat of force."

See Illinois Pattern Jury Instructions, Criminal, No. 11.55 (3d ed. 1992) (hereinafter IPI Criminal 3d).

(2) The instruction on the consent defense provided:

"It is a defense to the charge of aggravated criminal sexual assault that [A.B.] consented."

See IPI Criminal 3d No. 11.63.

(3) The definitional instruction of "consent" provided:

"The word 'consent' means a freely given agreement to the act of sexual penetration in question. Lack of verbal or physical resistance or submission by the victim resulting from the use of force or threat of force by the defendant shall not constitute consent."

See IPI Criminal 3d No. 11.63A (taken from 720 ILCS 5/12—17(a) (West 1994)).

(4) The definitional instruction on "force or threat of force" provided:

"The term 'force or threat of force' means the use of force or violence or the threat of force or violence including, but not limited to when the accused has overcome the victim by use of superior strength or superior size."

See IPI Criminal 3d No. 11.65 (taken from 720 ILCS 5/12—12(d) (West 1994)).

(5) The issues instruction on aggravated criminal sexual assault—aggravation by circumstances provided:

"To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:

*First Proposition*: That the defendant committed an act of sexual penetration upon [A.B.]; and

*Second Proposition*: That the act was committed by the use of force or threat of force, and that [A.B.] did not consent to the act of sexual penetration; and

*Third Proposition*: That the defendant caused bodily harm to [A.B.]."

See IPI Criminal 3d No. 11.58.

The jury found defendant guilty of aggravated criminal sexual assault for counts II and III and not guilty of aggravated criminal sexual assault on count I (vaginal intercourse). Perhaps the jury decided the activity was consensual up to the point of anal intercourse. Defendant was sentenced to consecutive seven-year prison terms. Defendant appeals, contending the trial court committed plain error by failing to properly respond to the jury's request for a definition of the term "force" as used in the jury instructions. We affirm.

Initially, the State argues defendant has waived this issue on appeal because he did not object to the trial court's response to the jury's request or submit a written alternative definition to give the jury. Generally, a defendant waives defects in jury instructions, as well as instructions to jury questions, when he fails to make a timely objection. *People v. Kittinger*, 261 Ill. App. 3d 1033, 1038, 633 N.E.2d 1368, 1371 (1994).

Clearly, defendant has waived the issue on appeal. According to the record, defendant not only failed to object to the trial court's response, but specifically agreed to it. When a defendant acquiesces in the circuit court's answer to the jury's question, the defendant cannot later complain that the circuit court abused its discretion. *People v. Reid*, 136 Ill. 2d 27, 38, 554 N.E.2d 174, 179 (1990). Also, defendant never submitted an alternative instruction on the definition of "force" and failed to raise the issue in a posttrial motion. When jurors raise a question during deliberations, counsel should submit, in writing,

the specific response counsel wants the court to give the jury. *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 173, 683 N.E.2d 985, 991 (1997). We will review issues raised for the first time on appeal only if the record reflects plain error. *People v. Fetter*, 227 Ill. App. 3d 1003, 1007, 591 N.E.2d 474, 476 (1992). Plain error exists when an error deprives the defendant of a fair and impartial trial or any substantial error occurs in cases where the evidence is closely balanced. *People v. Schmidt*, 168 Ill. App. 3d 873, 878, 522 N.E.2d 1317, 1320 (1988). Failure to instruct the jury in a way that allows it to consider a viable defense is deemed plain error. *People v. Lee*, 229 Ill. App. 3d 254, 258-59, 593 N.E.2d 800, 803 (1992).

Even if we review this issue under the doctrine of plain error, we must affirm. When a jury is confused about a question of law, the trial court has a duty to provide clarification, even though the jury was initially properly instructed. *People v. Childs*, 159 Ill. 2d 217, 229, 636 N.E.2d 534, 539 (1994). However, a trial judge may decline to answer a jury's question when the instructions are readily understandable, further instructions would mislead the jurors, jurors raise questions of fact, or an answer or explanation by the court would likely direct a verdict. *Reid*, 136 Ill. 2d at 39, 554 N.E.2d at 179-80. A trial court's decision to answer or refrain from answering a question from the jury will not be disturbed absent an abuse of discretion. See generally *Reid*, 136 Ill. 2d at 38-39, 554 N.E.2d at 179 (referencing the abuse of discretion standard).

IPI Criminal 3d No. 11.65C, the definition of "force or threat of force," is subject to criticism. First of all, the definition is circular: " 'force or threat of force' means the use of force or violence or the threat of force or violence." IPI Criminal 3d No. 11.65C. Second, the definition is one-sided. It does not really attempt to define what "force" is; instead, it sets out a particular situation that is required to fall within the definition of "force or threat of force," that situation being "when the accused has overcome the victim by use of superior strength [or] superior size" (see IPI Criminal 3d No. 11.65C). *Cf.* Illinois Pattern Jury Instructions, Civil (2d ed. 1971) (hereinafter Civil IPI), foreword, at VII (court should fairly state law, rather than use neutralized partisan instructions, "sounding first like plaintiff's counsel and then in the next sentence like defense counsel"). The Civil IPI also states that instructions should not single out a particular item of evidence for comment.

What does it mean that "the accused has overcome the victim by use of superior strength or superior size"? IPI Criminal 3d No. 11.65C; 720 ILCS 5/12—12(d) (West 1996). If a man asks a woman to have sex and she says "yes" or she says nothing, in either case

because he is bigger than she is and she is afraid of him, is there a criminal sexual assault? It could be argued that superior size by itself is not enough, that the accused must exhibit some threat of violence for a victim to be "overcome." The definition says, however, that "force" means "the threat of force *or* violence." (Emphasis added.) IPI Criminal 3d No. 11.65C. Of course, if the accused's conduct would convey a threat of harm to a reasonable person, that would constitute the use of force, but if there is no such conduct, is mere size enough to justify the victim's failure to make even "verbal *** resistance"? IPI Criminal 3d No. 11.63A; 720 ILCS 5/12—17(a) (West 1994).

The word "force" is subject to a number of definitions. One definition, along the lines of the laws of physics, is that force is "strength or energy exerted or brought to bear: cause of motion or change." Merriam Webster's Collegiate Dictionary 455 (10th ed. 1996) (definition 1a, noun form). A separate definition is "violence, compulsion, or constraint exerted upon or against a person or thing." Merriam Webster's Collegiate Dictionary 455 (10th ed. 1996) (definition 3, noun form). Every act of sexual intercourse involves force in the sense of energy or motion, but it cannot be said that every act of sexual intercourse involves force that will unlawfully "overcome" the other participant or "victim."

The jury's request was a legitimate one and the trial court should have made some attempt to provide assistance. The trial court could have told the jury that the physical effort inherent in every act of sexual intercourse is not the "force" referred to in the instructions. The trial court could have told the jury that superior size is not enough, that there must have been some conduct on the part of the accused from which a reasonable person would have felt threatened. The trial court could have told the jury that there was consent if a reasonable person in defendant's position would have believed he had the victim's approval to engage in sexual intercourse.

Nevertheless, it is impossible to find that defendant was harmed by the failure to give any additional instruction. Surely the jury did not believe that "force" meant the physical effort inherent in every act of sexual intercourse. It appears the jury was concerned with the definition as to count I, where the State presented little evidence as to the victim's response. From the evidence presented, the victim apparently did not say anything during that act, and her resistance mainly consisted of attempts to push defendant away, resistance which the victim conceded defendant may not even have noticed because of his size. The jury resolved that count in defendant's favor. There were no such concerns with the second count. As to that count,

the victim testified that defendant grabbed her by the hair to turn her over, and she was screaming throughout the incident. After finding that the second act was accomplished by force and without consent, the jury would logically have concluded the third act also was accomplished by force and without consent. "[A] person of common intelligence and experience can distinguish, without difficulty, between sexual acts accomplished by force *** and, for example, sexual activity between consenting adults." *People v. Haywood*, 118 Ill. 2d 263, 274, 515 N.E.2d 45, 50 (1987); *People v. Bowen*, 241 Ill. App. 3d 608, 617, 609 N.E.2d 346, 355 (1993).

Defendant waived the issue on appeal and has not demonstrated plain error or that he was deprived of a fair trial by the trial court's response.

Accordingly, we affirm the judgment of the circuit court of Champaign County.

Affirmed.

GREEN, J., concurs.

JUSTICE KNECHT, specially concurring:

I agree with the result, and I believe the majority raises an arguable question about the definitional instruction on force or threat of force. IPI Criminal 3d No. 11.65. I specially concur to suggest the majority may have chosen the wrong case to raise the question and may mislead trial courts.

We can only speculate why the jury asked for a more detailed definition of "force." It is possible a further explanation of force and use of force may have resulted in defendant's conviction on an additional count of aggravated criminal sexual assault. Instead of being prejudiced, the defendant may have been advantaged by the trial court's failure to provide additional explanation.

The key point here is defendant acquiesced in the trial court's standard reply—resolve the case using the instructions given. The defendant should have prepared a specific written response he wanted the court to give the jury. See *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 173-74, 683 N.E.2d 985, 991-92 (1997). He did not and agreed with the trial court's reply.

If we had a specific written response from defendant we could then begin to meaningfully examine whether an appropriate and helpful reply could have been given. Without such a proposed response, we should not theorize about what the trial judge could have said. "Force" and "consent" simply do not have static meanings. The

significance of various factors—a cry for help, level of resistance, attempt to escape—depend on the circumstances of each case. *Bowen*, 241 Ill. App. 3d at 620, 609 N.E.2d at 356.

The statutory provisions defining "force" and "consent," upon which the jury instructions are based, are not unconstitutionally vague. *Haywood*, 118 Ill. 2d at 270, 515 N.E.2d at 48; *Bowen*, 241 Ill. App. 3d at 616-17, 609 N.E.2d at 354. Perhaps the definitions could be clearer and more detailed. Even without that greater detail, a person of ordinary intelligence should understand when consent has been freely given and when lack of resistance is actually the result of force. *Haywood*, 118 Ill. 2d at 274, 515 N.E.2d at 50; *Bowen*, 241 Ill. App. 3d at 617, 609 N.E.2d at 355.

The issue is a sensitive one, because a discussion of consent and force is often viewed as impliedly questioning the victim's conduct. The question of consent as a defense has caused the greatest difficulty in sex crimes because it focuses scrutiny on the victim's behavior, as well as the accused's, and brings into consideration a whole catalogue of assumptions, myths, and folk wisdom about sexual behavior and the differences in how men and women communicate.

When the majority asks rhetorically whether the mere size of the accused absent other conduct is enough to justify a victim's failure to make even verbal resistance, the question suggests victims have made such a claim. I am not aware of any reported case where the victim contended the accused's size *alone* caused the victim to submit without any resistance, verbal or otherwise. Superior size with *no other* attendant circumstances would not be enough.

In this case, defendant used his superior size to pin the victim to a picnic table. Thus, his large body was used to overpower the victim. A.B. testified the defendant prevented her from leaving the park when she tried to do so. A 260-pound man who rips your dress, squeezes your breasts, pushes you back onto a picnic table and tells you to shut up in response to your efforts to shove him off, then digitally penetrates your vagina and anus and then penetrates your vagina with his penis, then sodomizes you and then again penetrates you with his penis while you are screaming and struggling to push him off, would know he is taking what he wants by force and not engaging in what both parties desire because of a freely given agreement.

There is a distinction between real consent and mere submission. We should all know the difference, and if we do not, it is incumbent on us to learn.