No.  2--99--0242
 

30 November 2000

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF     ) Appeal from the Circuit Court

ILLINOIS,                      ) of Kendall County.

                               )

Plaintiff-Appellee,       ) Nos. 98--CF--229

                               ) 98--CF--230

v.                             ) 98--CF--231

                               )

GLEN DALE WALDRUP,             ) Honorable

                               ) James M. Wilson,

Defendant-Appellant.      ) Judge, Presiding.

JUSTICE GALASSO delivered the opinion of the court:

Following a jury trial, the defendant, Glen Dale Waldrup, was found guilty of home invasion (720 ILCS 5/12--11 (West 1998)), three counts of aggravated criminal sexual assault (720 ILCS 5/12--

14(a)(1) (West 1998)), and two counts of aggravated unlawful restraint (720 ILCS 5/10--3.1(a) (West 1998)).  The defendant was sentenced to terms of imprisonment in the Department of Corrections as follows: 15 years on each count of aggravated criminal sexual assault to be served consecutively to each other; 20 years for home invasion; and 3 years on each count of aggravated unlawful restraint.  The sentences for home invasion and aggravated unlawful restraint were ordered to be served concurrently with the sentences imposed for aggravated criminal sexual assault.  The defendant filed a timely notice of appeal.

On appeal, the defendant raises the following issues: (1) whether the State proved the element of unauthorized entry beyond a reasonable doubt; (2) whether the trial court erred when, in responding to a note from the jury, it failed to clarify the doctrine of limited authority for the jury; and (3) whether the trial court erred when it ordered the defendant’s sentences for aggravated criminal sexual assault to be served consecutively.

At the outset, we note that the defendant does not challenge the sufficiency of the evidence supporting his convictions of aggravated criminal sexual assault and aggravated unlawful restraint.  Therefore, we will recite only those facts related to his conviction on the charge of home invasion.

Section 12--11 of the Criminal Code of 1963 defines the offense of home invasion as follows:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present and 

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs[.]"  720 ILCS 5/12--11(a)(1) (West 1996).

The gravamen of the offense is unauthorized entry.  
People v. Peeples
, 155 Ill. 2d 422, 487 (1993).

The information in this case charged that the defendant committed the offense of home invasion in that he entered the dwelling place of Michelle Griesmann, knowing Michelle and Joseph M. (Mark) Hansen to be present therein and, while armed with a dangerous weapon, threatened the imminent use of force upon Michelle and Mark.

Michelle, who was 18 years of age at the time of the incident, testified that on July 26, 1998, Mark, who was her boyfriend, and she were in the apartment that she shared with her roommate, Autumn Wilson.  Autumn was not present that evening.  At approximately 1:30 a.m., while Mark and Michelle were watching television, the defendant, whom Michelle knew, entered the apartment via the back door, which had been left unlocked.  The defendant, who is 6 feet  2 inches tall and weighed 198 pounds, asked where Autumn was.  After Michelle explained that Autumn was at her ex-husband’s, the defendant told her that he was running from the police and needed a place to stay.  After Mark refused the defendant’s request to go outside to look for the police, the defendant left.  At Michelle’s request, Mark then locked the back door.  Michelle heard the defendant knocking at the back door and jiggling the door handle.  She then heard a noise that sounded like the door being kicked in.  The defendant entered the living room and grabbed Mark, asking why the door had been locked.  When Michelle told him to stop, the defendant complied and sat on the couch.

According to Michelle, the defendant renewed his request for a place to stay, offering to pay several months' rent, at which time he pulled out several packets or pieces of paper and laid them on the table.  At that point, Michelle and Mark went to bed in Michelle’s bedroom, leaving the defendant sitting on the couch with the television on.

At approximately 3:30 or 4 a.m., the overhead light in the bedroom came on, and Michelle saw the defendant standing in the bedroom doorway with a knife in one hand and a cord in the other. She recognized the knife as a steak knife from the kitchen.  The defendant sat on top of Mark and Michelle and began cutting up a curling iron cord.  When Michelle resisted, the defendant struck her in the face.  After the defendant had tied up Mark, he took Michelle into the living room, where he sexually assaulted her.

Michelle acknowledged that she met the defendant approximately one month prior to July 26, 1998, when the defendant came over to the apartment looking for Autumn.  Michelle sat and talked to the defendant while he waited for Autumn.  He was still there at 3 a.m. when she went to bed.  She denied ever going out on a date with the defendant.

The defendant testified that he had met Michelle in May 1998 and that since that time they had had sexual relations on two occasions.  On July 26, 1998, he arrived at Michelle’s apartment and knocked on the door.  When Michelle answered the door, she seemed surprised to see him.  When he explained that the police were after him, she told him that Mark was in the apartment.  When the defendant asked if he could come in, she admitted him but cautioned him not to start anything with Mark.  After he explained what had happened, he asked Michelle if he could spend the night, to which Michelle agreed.  Mark and Michelle went into Michelle’s bedroom while the defendant remained in the living room.  Later, Michelle and the defendant had consensual sex.  When Mark discovered them, he came at the defendant with a knife, and the defendant left.

It is the function of the jury to assess the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence.  
Peeples
, 155 Ill. 2d at 487.  On appeal, a reviewing court, considering all the evidence in the light most favorable to the prosecution, must determine whether any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime.  
Peeples
, 155 Ill. 2d at 487. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant’s guilt.  
Peeples
, 155 Ill. 2d at 487.

The defendant contends that, under its theory of "limited entry," the State failed to prove beyond a reasonable doubt that his entry into Michelle’s apartment was unauthorized.  In his brief, the defendant quotes a portion of the information charging him with home invasion, as follows:

" 'GLEN D. WALDRUP, ...knowingly and without authority, entered the dwelling place Michelle A. Griesmann (
sic
) and Joseph M. Hansen, Jr. to be present within the dwelling and while armed with a dangerous weapon ***.' "

The defendant argues that the "language shift 'to be present within the dwelling and while armed with a dangerous weapon' indicates that the State’s theory is one of trespass 
ab
 
initio
, or also known as the limited entry doctrine."  The defendant apparently is referring to the "limited-authority" doctrine.

Under the limited-authority doctrine, when a defendant comes to a private residence and is invited in by the occupant, the authorization to enter is limited; criminal actions exceed this limited authority.  
Peeples
, 155 Ill. 2d at 487.  No individual who is granted access to a dwelling can be said to be an authorized entrant if he intends to commit criminal acts therein, because, if such intentions had been communicated to the owner at the time of the entry, it would have resulted in the individual being barred from the premises 
ab
 
initio
.  
People v. Bush
, 157 Ill. 2d 248, 253-

54 (1993).  The determination of whether an entry is authorized depends upon whether the defendant possessed the intent to perform a criminal act therein at the time entry was granted.  
Bush
, 157 Ill. 2d at 254.  Thus, where the defendant gains access to the victim’s residence through trickery and deceit and with the intent to commit criminal acts, his entry is unauthorized and the consent given vitiated because the true purpose for the entry exceeded the limited authorization granted.  
Bush
, 157 Ill. 2d at 254. Conversely, where the defendant enters with an innocent intent, his entry is authorized, and criminal actions thereafter engaged in by the defendant do not change the status of the entry.  
Bush
, 157 Ill. 2d at 254.

We note that the defendant has misquoted the information in this case.  The information charging the defendant with home invasion actually reads as follows:

"GLEN D. WALDRUP *** entered the dwelling place [of] Michelle A. Griesmann, *** 
knowing Michelle A. Griesmann and Joseph M. Hansen, Jr. to be present within the dwelling and while armed with a dangerous weapon
 ***."  (Emphasis added.)

The defendant’s omission of the word "knowing" makes it appear as though the State was alleging that the defendant’s "authorization" to enter the apartment was vitiated by his subsequent activities therein.  However, as can be seen from reading the information, the State, in fact, did not allege the limited-authority doctrine.

Nonetheless, the defendant argues that the evidence at trial supports his contention that his entry into Michelle’s apartment was authorized.  He points to testimony that the door to the apartment was routinely left unlocked when Michelle was home and that, on a prior occasion, he had just walked into the apartment and sat on the couch, just as he did on July 26, 1998.  The defendant also notes that, after the defendant left the first time, Mark locked only one of the three outside doors to the apartment. Finally, the defendant points to the fact that he did not possess a weapon when he entered the premises, that he ceased pulling Mark’s hair when Michelle asked him to, and that neither Michelle nor Mark ordered the defendant to leave the apartment.  Instead, they simply retired for the night.  Thus, the defendant concludes, the evidence establishes that his entry into Michelle’s apartment was authorized, but it fails to establish that, at the time of his "authorized" entry, he intended to commit criminal acts therein.  We disagree with both premises.

While the defendant testified that Michelle admitted him to the apartment and that he never left until many hours later, Michelle and Mark testified that the defendant entered the first time without asking to be admitted.  They resorted to locking the door after the defendant’s first departure and refused to admit the defendant after he discovered the door was locked and knocked on the door.  The defendant then kicked in the door to gain entry. As the court in 
People v. Priest
, 297 Ill. App. 3d 797 (1998) explained:

"The [limited-authority] doctrine applies only 
after
 a defendant was invited into or granted access to a dwelling. Even when a defendant, on previous occasions, was permitted under certain circumstances to enter a dwelling without knocking, if defendant was not invited into the house on a particular occasion, sufficient evidence existed that defendant had no authority to enter the dwelling on that occasion, supporting a conviction of home invasion." (Emphasis in original.)  
Priest
, 297 Ill. App. 3d at 805-06.

Moreover, the fact that Michelle and Mark retired to Michelle’s bedroom without ridding themselves of the defendant’s presence is rendered understandable in light of the fact that there was no working telephone in the apartment.  In addition, the defendant’s personal statistics included the fact that he was nicknamed "Muscle Dale" because he worked out and could bench press 300 pounds.

We conclude that there was sufficient evidence from which the jury could conclude, beyond a reasonable doubt, that the defendant’s entry into Michelle’s apartment was unauthorized and thus he was properly found guilty of home invasion.

Next, the defendant contends that the trial court erred when, in response to a note from the jury, it failed to clarify for the jury the doctrine of limited authority.  He concedes that he failed to raise the issue before the trial court but requests that this court consider the merits of the issue under the plain error rule. See 134 Ill. 2d R. 615(a).

During jury deliberations, the jury sent the following note to the trial court:

"Our ? is what is the 
qualification
 of Home Invasion?  Is it the actual time of entering of the premises property or is Home Invasion the duration of his stay in the home?" (Emphasis in original.)

The trial court read into the record its response as follows:

"The response formulated by counsel and the Court: Please read the instructions.  The definition of home invasion is included in those instructions.  Please keep this note with the instructions slash verdict forms.  JAW, Judge.  Is that correct?

MR. BLAKE [defense counsel]: That is correct.

MS. FLETCHER [assistant State’s Attorney]: That is correct, Judge."

The definition of home invasion provided to the jury in this case reads as follows:

"A person commits the offense of home invasion when he, not being a police officer acting in the line of duty, without authority, knowingly enters the dwelling place of another when he knows or has reason to know that one or more persons is present, and 

while armed with a dangerous weapon he uses force or threatens the imminent use of force upon any person within the dwelling place, whether or not injury occurs." Illinois Pattern Jury Instructions, Criminal No. 11.53 (3d ed. Supp. 1996) (hereinafter IPI Criminal 3d No. 11.53 (Supp. 1996)).

Our supreme court has held that the plain error rule may be invoked in criminal cases in two limited circumstances: first, where the evidence is closely balanced, in order to preclude argument that an innocent person may have been wrongly convicted; and second, to review errors that are of such magnitude that there is a substantial risk that the accused was denied a fair and impartial trial and remedying the errors is necessary to preserve the integrity of the judicial process.  
People v. Vargas
, 174 Ill. 2d 355, 363 (1996).

The evidence as to the home invasion charge is not closely balanced.  Both Michelle and Mark testified that, after the defendant left the apartment to look outside for the police, Mark locked the door.  The defendant then reentered the apartment by kicking in the door.  Both Michelle and a police officer testified that the back door was damaged.  The defendant denied that he had left Michelle’s apartment so as to require him to make a second entry into the apartment.  However, the defendant’s witness, Michelle’s upstairs neighbor, who initially testified that she did not notice any damage to the back door of Michelle’s apartment, acknowledged that she did not open the screen door to look at the wooden door but merely walked by it.

We must then consider whether the alleged error deprived the defendant of a fair and impartial trial.

Failure to instruct a jury in a way that allows it to consider a viable defense is deemed plain error.  
People v. Kinney
, 294 Ill. App. 3d 903, 907 (1998).  It is true that, when a jury is confused about a question of law, the trial court has a duty to provide clarification even though the jury was initially properly instructed.  
Kinney
, 294 Ill. App. 3d at 907.  However, a trial judge may decline to answer a jury’s question when the instructions are readily understandable, further instructions would mislead the jurors, jurors raise questions of fact, or an answer or explanation by the court would likely direct a verdict.  
Kinney
, 294 Ill. App. 3d at 907.  A trial court’s decision to answer or refrain from answering a question from the jury will not be disturbed absent an abuse of discretion.  
Kinney
, 294 Ill. App. 3d at 907.

We note that the trial court’s answer to the jury in this case was arrived at with the agreement of both the State and defense counsel.  There was no objection to the instructions pertaining to the home invasion charge when they were tendered.  Nor did the defendant offer IPI Criminal 3d No. 11.53A (Supp. 1996), which would have conveyed the limited-authority doctrine to the jury.  The defendant’s theory at trial was not only that his entry into Michelle’s apartment was authorized but also that he did not commit the acts of restraining Mark and Michelle and that he engaged in consensual sex with Michelle.  For the trial court to ignore the defense counsel’s wishes that the jury be referred back to the instructions and, instead, provide an explanation of the limited-

authority doctrine might have caused the jurors to believe that the defendant was conceding that he had committed the acts but had not intended to commit them when he entered the apartment. Moreover, given the evidence in this case, we cannot say that the defendant was deprived of a viable defense.

People v. Childs
, 159 Ill. 2d 217 (1994), relied on by the defendant, is distinguishable.  In that case, the trial court responded 
ex
 
parte
 to a jury question as to whether a finding of guilty as to armed robbery required a finding of guilty as to murder by referring the jury back to the instructions it had been given.  Because the trial court made no effort to contact defense counsel and acknowledged confusion with the jury’s question, the supreme court found that the defendant had been deprived of the opportunity to participate in the determination of an appropriate response to the question.  Although the court determined that the trial court’s response was in effect no response at all, the court concluded that it was the manner in which the trial court had dealt with the jury’s inquiry that was a factor in the jury’s verdict of guilty.  
Childs
, 159 Ill. 2d at 234.

We conclude that, in the absence of plain error, the defendant has waived this issue on appeal.

Finally, the defendant contends that the trial court erred in ordering that the sentences imposed on the three counts of aggravated criminal sexual assault be served consecutively to each other.

Section 5--8--4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5--8--4(a) (West 1998)) provides in pertinent part as follows:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless *** the defendant was convicted of a violation of Section 12--13, 12--14, or 12--14.1 of the Criminal Code of 1961 [
i.e.
, criminal sexual assault, aggravated criminal sexual assault, or predatory criminal sexual assault of a child], in which event the court shall enter sentences to run consecutively."

The defendant contends that consecutive sentences were improper in this case because the defendant’s sexual assault of Michelle was not part of a single course of conduct during which there was no substantial change in the nature of the criminal objective.  He argues that his initial objective in entering Michelle’s apartment was to escape from the police and that his objective clearly changed when he tied up Mark and Michelle and assaulted Michelle.  The defendant relies on 
People v. Falconer
, 292 Ill. App. 3d 538 (1997).  In that case, the defendant was charged with molesting the victim over a period of months and was ultimately convicted of three counts of aggravated criminal sexual assault.  The reviewing court vacated the defendant’s consecutive sentences and remanded for a new sentencing hearing, holding that the record was insufficient to establish that any two of the offenses occurred during a "single course of conduct" and, therefore, consecutive sentences were improper.  
Falconer
, 292 Ill. App. 3d at 543.

Falconer
 is clearly distinguishable from the present case. Here, the evidence showed that the defendant committed three acts of sexual assault upon Michelle over a short period of time.  No substantial period of time elapsed between the assaults.  
Cf.
 
People v. Bole
, 155 Ill. 2d 188, 194 (1993) (assaults occurred on three separate days, several days apart, and therefore were not committed in a single course of conduct).  While the defendant’s original objective may have changed from escaping from the police to sexually assaulting Michelle, his "criminal objective" did not change during the commission of the assaults he perpetrated on Michelle, and it is clear from the evidence that he committed them as part of a "single course of conduct."

Subsequent to the filing of our disposition in this case, the defendant filed a petition for rehearing.  In his petition, the defendant, 
inter
 
alia
, contends that section 5--8--4(a) requires consecutive sentences only if the home invasion count was a part of the same course of conduct as the aggravated criminal sexual assault counts.  We disagree.  The defendant was found guilty of three counts of aggravated criminal sexual assault, one of the enumerated offenses in section 5--8--4(a).  Under the clear language of that section, conviction of two or more counts of aggravated criminal sexual assault requires the trial court to order the sentences for those offenses to be served consecutively if those offenses were part of the same course of conduct, regardless of whether the home invasion count was a part of the same course of conduct.

However, in his petition for rehearing, the defendant also contends that the United States Supreme Court’s decision in 
Apprendi v. New Jersey
, 530 U.S. ___, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), requires that his conviction be reversed.  The defendant argues that he received consecutive sentences based upon an aggravating circumstance that was not submitted to the jury, namely, whether he committed the aggravated criminal sexual assaults "as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5--8--4(a) (West 1998).

At the outset, we reject the State’s argument that the defendant waived this issue because he failed to raise it in his original brief in this case.  Whenever a defendant challenges the trial court’s statutory authority to impose a particular sentence, those contentions are not subject to waiver.  
People v. Clifton
, Nos. 1--98--2126, 1--98--2384 cons., slip op. at 65  (September 29, 2000).

The State also argues that 
Apprendi
 should not be given retroactive application, citing 
Gilmore v. Taylor
, 508 U.S. 333, 124 L. Ed. 2d 306, 113 S. Ct. 2112 (1993).  In 
Gilmore
, the United States Supreme Court held that a decision announcing a new constitutional rule of criminal procedure would not be applied retroactively.  
Gilmore
, 508 U.S. at 344-45, 124 L. Ed. 2d at 319-

20, 113 S. Ct. at 2119.  However, the holding in 
Gilmore
 applies to cases in which a defendant is seeking postconviction relief, not to cases in which the defendant’s direct appeal is still pending.  See 
People v. Salazar
, 162 Ill. 2d 513, 519-20 (1994) (the defendant could have raised the supreme court’s decision as to the effect of improper jury instructions in his direct appeal, since the court’s decision was announced while the defendant’s direct appeal was still pending).  Therefore, we must determine the impact of 
Apprendi
 on the defendant’s sentences in this case.

In 
Apprendi
, the Supreme Court held that, except for a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  The Court struck down a New Jersey statute that allowed the trial court to impose a sentence longer than the maximum if the trial court found that the offense was committed to intimidate an individual or a group because of certain enumerated reasons.  The Court rejected the State’s argument that the trial court could have properly sentenced Apprendi to the same number of years by making his other sentences run consecutively, on the basis that the constitutional question presented was whether the 12-year sentence imposed on one conviction was permissible, given that it was above the 10-year maximum term upon conviction for that offense.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 445, 120 S. Ct. at 2354.

The State responds that consecutive sentences determine only the manner in which the individual sentences are to be served and have nothing to do with the length of each sentence.  Sentences made consecutive to one another do not form a new, single sentence under section 5--8--4(e) of the Code (730 ILCS 5/5--8--4(e) (West 1998)).  
Thomas v. Greer
, 143 Ill. 2d 271, 278 (1991).  Section 5--

8--4(e) " 'is directed to the Department of Corrections, not the judiciary, and indicates the manner in which consecutive sentences shall be served for the purpose of determining an offender’s eligibility for parole.'  [Citation.]"  
Thomas
, 143 Ill. 2d at 278-

79.

In this case, for each of the aggravated criminal sexual assault convictions, the defendant received a sentence that was within the sentencing range for that offense.  See 730 ILCS 5--8--

1(a)(3) (West 1998).  Therefore, the present case differs from 
Apprendi
 in that here the defendant’s individual sentences were not "enhanced" beyond the maximum permitted under the Code.  However, as the Court in 
Apprendi
 noted, "the relevant inquiry is one not of form, but of effect--does the required finding expose the defendant to greater punishment than that authorized by the jury’s guilty verdict?"  
Apprendi
, 530 U.S. at __, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.

Based upon the reasoning in 
Apprendi
, we conclude that the imposition of consecutive sentences is the same as a sentence enhancement, and, therefore, other than the fact of a prior conviction, any fact that is utilized to increase the amount of time a defendant must serve must be submitted to the trier of fact and proved beyond a reasonable doubt.  Thus, the requirement of section 5--8--4(a) that the defendant be sentenced to consecutive sentences for the offenses listed therein if the defendant committed the offenses "as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective" is unconstitutional.  We note that the Appellate Court, First District, has reached the same conclusion in a case involving consecutive sentences.  See 
Clifton
, slip op. at 66-72.  As a result, the defendant may not be subjected to imposition of consecutive sentences for his aggravated criminal sexual assault convictions.

Finally, the defendant contends that his convictions should be reversed on the basis of 
Apprendi
.  We note that, in 
Clifton
, the court ordered Clifton’s sentences to be served concurrently and therefore did not address the issue of whether 
Apprendi
 requires that the facts upon which the sentence depends be pleaded in the indictment or information.  
Clifton
, slip op. at 71-72.  However, the Court in 
Apprendi
 specifically stated that it was not addressing separately the question of whether the indictment must set forth the sentencing factor.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 447, 120 S. Ct. at 2356.  The Court reasoned that Apprendi had argued only due process of law, which is applicable to the states via the fourteenth amendment, and that the fourteenth amendment "has not *** been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury.' " 
Apprendi
, 530 U.S. at ___ n.3, 147 L. Ed. 2d at 447 n.3, 120 S. Ct. at 2355 n.3.  We conclude, therefore, that 
Apprendi
 does not require that the defendant’s convictions of aggravated criminal sexual assault be reversed.

We affirm the defendant’s convictions and sentences in this case.  However, we modify that portion of the judgment requiring that the sentences for the three aggravated criminal assault convictions run consecutively to each other and order those sentences to run concurrently.

Affirmed as modified.

INGLIS and GEIGER, JJ., concur.